No. 25-3133

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS, *EX REL.* KWAME RAOUL,
ATTORNEY GENERAL OF THE STATE OF ILLINOIS,

*Plaintiff-Appellee*,

*v.*

3M COMPANY,

*Defendant-Appellant*,

On Appeal from the
United States District Court for the Central District of Illinois
Case No. 4:25-cv-4189-SLD-RLH | Hon. Sara Darrow

## BRIEF OF APPELLANT 3M COMPANY

Amir C. Tayrani
Jonathan C. Bond
John W. Tienken
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036

Elizabeth A. Kiernan
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201

Lauren R. Goldman
 *Counsel of Record*
Justine Goeke
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
LGoldman@gibsondunn.com

*Counsel for Defendant-Appellant 3M Company*

### APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-3133

Short Caption: People of the State of Illinois ex. rel. Kwame Raoul v. 3M Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    3M Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Jenner & Block LLP; Clement & Murphy, PLLC; Mayer Brown LLP; Maslon LLP;

    Goldman Ismail Tomaselli Brennan & Baum LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        3M Company has no parent corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held company owns 10% or more of 3M Company's stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Lauren R. Goldman      Date: 3/06/2026

Attorney's Printed Name: Lauren R. Goldman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: 200 Park Avenue

New York, NY 10166

Phone Number: (212) 351-2375      Fax Number: (212) 716-0875

E-Mail Address: LGoldman@gibsondunn.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-3133

Short Caption: People of the State of Illinois ex. rel. Kwame Raoul v. 3M Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

3M Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP; Jenner & Block LLP; Clement & Murphy, PLLC; Mayer Brown LLP; Maslon LLP;

Goldman Ismail Tomaselli Brennan & Baum LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        3M Company has no parent corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held company owns 10% or more of 3M Company's stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Amir C. Tayrani     Date: 3/06/2026

Attorney's Printed Name: Amir C. Tayrani

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 1700 M Street, N.W.

Washington, DC 20036

Phone Number: (202) 887-3692     Fax Number: (202) 530-9645

E-Mail Address: ATayrani@gibsondunn.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-3133

Short Caption: People of the State of Illinois ex. rel. Kwame Raoul v. 3M Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    3M Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Jenner & Block LLP; Clement & Murphy, PLLC; Mayer Brown LLP; Maslon LLP;

    Goldman Ismail Tomaselli Brennan & Baum LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        3M Company has no parent corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held company owns 10% or more of 3M Company's stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Jonathan C. Bond    Date: 3/06/2026

Attorney's Printed Name: Jonathan C. Bond

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address: 1700 M Street, N.W.

    Washington, DC 20036

Phone Number: (202) 887-3704    Fax Number: (202) 530-9603

E-Mail Address: JBond@gibsondunn.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-3133

Short Caption: People of the State of Illinois ex. rel. Kwame Raoul v. 3M Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

3M Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP; Jenner & Block LLP; Clement & Murphy, PLLC; Mayer Brown LLP; Maslon LLP;

Goldman Ismail Tomaselli Brennan & Baum LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

3M Company has no parent corporation

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly held company owns 10% or more of 3M Company's stock

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Justine Goeke      Date: 3/06/2026

Attorney's Printed Name: Justine Goeke

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 200 Park Avenue

New York, NY 10166

Phone Number: (212) 351-5372      Fax Number: (212) 817-9472

E-Mail Address: JGoeke@gibsondunn.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-3133

Short Caption: People of the State of Illinois ex. rel. Kwame Raoul v. 3M Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    3M Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Jenner & Block LLP; Clement & Murphy, PLLC; Mayer Brown LLP; Maslon LLP;

    Goldman Ismail Tomaselli Brennan & Baum LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        3M Company has no parent corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held company owns 10% or more of 3M Company's stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Elizabeth A. Kiernan    Date: 3/06/2026

Attorney's Printed Name: Elizabeth A. Kiernan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 2001 Ross Avenue, Suite 2100

    Dallas, Texas 75201

Phone Number: (214) 698-3110    Fax Number: (214) 571-2917

E-Mail Address: EKiernan@gibsondunn.com

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Defendant-Appellant 3M Company states that it is a publicly traded corporation that does not have any parent corporation. No publicly held corporation owns 10% or more of 3M Company's stock. The names of all law firms whose partners or associates have appeared for 3M Company in this case or are expected to appear for 3M Company in this Court are Gibson, Dunn & Crutcher LLP, Jenner & Block LLP, Clement & Murphy, PLLC, Mayer Brown LLP, Maslon LLP, and Goldman Ismail Tomaselli Brennan & Baum LLP.

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................. 1

Jurisdictional Statement ............................................................. 5

Issue Presented ........................................................................... 5

Statement of the Case ................................................................. 6

    A. PFAS And MilSpec AFFF ..................................................... 6

    B. The AFFF Multidistrict Litigation ..................................... 8

    C. The State's Suits And 3M's Removals ............................... 10

    D. State Court Discovery On Remand ..................................... 15

    E. 3M's Renewed Removal ....................................................... 19

Summary of the Argument ......................................................... 22

Standard of Review ..................................................................... 26

Argument .................................................................................... 26

  I. 3M Properly Removed Given The State's Retraction Of The
     Concessions It Made To This Court ...................................... 27

    A. The State's Retraction Of Its Prior Concessions Destroys
       The Only Basis For Remanding ......................................... 28

    B. The District Court Erred In Disregarding The State's
       Irreconcilable Positions .................................................... 30

  II. 3M's Allegations Regarding Commingling Of AFFF From
      The Savanna Army Depot Support Removal ........................ 35

Conclusion ................................................................................... 38

# TABLE OF AUTHORITIES

Pages

## Cases

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.,*
357 F. Supp. 3d 1391 (J.P.M.L. 2018) .................................................. 9

*Baker v. Atl. Richfield Co.,*
962 F.3d 937 (7th Cir. 2020) ........... 2, 12, 25, 27, 28, 30, 31, 32, 36, 37

*Betzner v. Boeing Co.,*
910 F.3d 1010 (7th Cir. 2018) ...................................................... 26, 27

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988) ............................................................................ 9

*Brinson v. Raytheon Co.,*
571 F.3d 1348 (11th Cir. 2009) ........................................................... 9

*Illinois ex rel. Raoul v. 3M Co.,*
111 F.4th 846 (7th Cir. 2024) ....................... 2, 3, 13, 14, 16, 17, 25, 26,
27, 28, 30, 33, 36

*Illinois ex rel. Raoul v. 3M Co.,*
693 F. Supp. 3d 948 (C.D. Ill. 2023) .................................................. 12

*Lapsley v. Xtek, Inc.,*
689 F.3d 802 (7th Cir. 2012) ............................................................. 29

*Maine v. 3M Co., Inc.,*
159 F.4th 129 (1st Cir. 2025) .................................................. 25, 28, 30

*Martin v. Franklin Cap. Corp.,*
546 U.S. 132 (2005) .......................................................................... 21

*Maryland v. 3M Co.,*
130 F.4th 380 (4th Cir. 2025) ........................................... 26, 28, 30, 36

*Ohio ex rel. Yost v. Ascent Health Servs., LLC,*
165 F.4th 999 (6th Cir. 2026) ............................................... 26, 28, 30

*Walker v. Trailer Transit, Inc.*,
    727 F.3d 819 (7th Cir. 2013)............................................................34

*Willingham v. Morgan*,
    395 U.S. 402 (1969)........................................................................27

**Statutes**

28 U.S.C. § 1291.................................................................................5

28 U.S.C. § 1442.............................................................1, 5, 10, 23, 26

28 U.S.C. § 1446................................................................19, 20, 34

28 U.S.C. § 1447....................................................................5, 21

28 U.S.C. § 2107.................................................................................5

**Rules**

Fed. R. App. P. 4 ..............................................................................5

**Other Authorities**

Don DeYoung et al., U.S. Naval Research Lab.,
    *Fulfilling the Roosevelts' Vision for American Naval Power*
    *(1923-2005)* (June 30, 2006) ........................................................6

U.S. Navy, *Military Specification: Fire Extinguishing Agent,*
    *Aqueous Film Forming Foam (AFFF) Liquid Concentrate,*
    *Six Percent, for Fresh and Sea Water*..........................................7

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant 3M Company respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and 7th Cir. R. 34(f). This case presents important questions about federal-officer removal, federal procedure, and the scope of this Court's precedents. 3M submits that oral argument would afford the parties and the Court an opportunity to explore these issues more fully.

## INTRODUCTION

The narrow question in this appeal is whether the State of Illinois's suit against 3M alleging environmental contamination of the State's natural resources was properly removed to federal court. This Court's decision in a prior appeal in this same case and the State's own conduct since that decision answer that question in the affirmative.

This suit is one of three separate actions that the State brought against 3M (and other defendants) in state court alleging contamination from per- and polyfluoroalkyl substances ("PFAS"). 3M removed all three suits under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), which allows federal government contractors (like 3M) to remove claims relating to work performed at the government's direction. 3M plausibly alleged that some of the contamination in each of the suits may have been caused by PFAS in the aqueous film-forming foam ("AFFF") that 3M produced for the U.S. military and pursuant to military specifications ("MilSpec"). And it plausibly alleged that PFAS from that MilSpec AFFF has commingled with (and become indistinguishable from) other PFAS in the environment. 3M thus asserted a government-contractor defense

for that MilSpec AFFF and removed on that basis. Two of the State's three cases against 3M are proceeding in federal court.

The State tried to stymie 3M's statutory right to a federal forum in this third case, which concerns alleged PFAS contamination at and around a 3M facility on the Mississippi River, by disclaiming recovery for harm from AFFF. But this Court squarely repudiated that strategy in the prior appeal. Applying Circuit precedent, the Court made clear that the State could not disclaim its way around 3M's defense in its complaint and thereby frustrate removal. *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848–49 (7th Cir. 2024) (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020)). That is because applying the State's disclaimer itself requires attempting to determine *whether and how much* particular contamination came from AFFF produced by 3M or another source—a factual question of causation at the heart of 3M's federal defense. That factfinding task, the Court held, is one for a federal court. Several other circuits have since embraced this Court's reasoning in other PFAS cases involving 3M.

This Court allowed this suit to be returned to state court only for a distinct and narrow reason. At oral argument on appeal, the State

"clearly and unequivocally conceded" that it would only seek to recover in this case for contamination that stemmed exclusively from one specific 3M manufacturing site, the Cordova Facility. *Raoul*, 111 F.4th at 849. This, the State represented, is what made this case unique: The State agreed to confine its claims to "areas where the contamination is wholly derived from the Cordova Facility." *Id.* So "[i]f even a morsel of contamination is not from PFAS produced at the Cordova Facility," the State agreed its "recovery is barred." *Id.*

But on remand, the State backtracked and abandoned its concessions. In responding to 3M's discovery requests, the State revealed that it will *not* (or *cannot*) confine its recovery to contamination from the single 3M site it had previously identified. The State also admitted that allocating PFAS contamination to different sources *will* be necessary and that the State intends to do so with expert testimony. That is exactly what this Court held impermissible—and exactly what the State's concessions in the prior appeal were supposed to avoid.

3M accordingly removed again, explaining that the State's retraction of its concessions eliminated the only basis for remand that this Court had identified. The district court granted the State's motion to remand.

Despite the strong federal policy favoring removal in this context, the district court credited the State's insistence that it had not changed its tune despite the plain language of the State's discovery responses, strained to reconcile the State's prior concessions with its new position, and faulted 3M for exercising its statutory (and time-limited) right to remove instead of seeking different relief back in *state* court.

3M's notice of removal also presented a new and independent basis for removal—which the district court ignored. Based on recent discovery, 3M identified an additional military site on the Mississippi River where 3M's military-specification AFFF was used. That additional MilSpec AFFF source—upstream of the Cordova Facility—means that *every* area in the river for which the State seeks recovery plausibly contains PFAS from MilSpec AFFF. Unless the State disavows any recovery for the whole river, which it has not done, apportionment of PFAS is unavoidable. But the court disregarded this independent ground entirely and remanded without a word addressing it.

The State secured the prior remand only because of a promise to this Court it did not keep. Now that the State has abandoned that promise, the case stands on the same footing as it did before oral argument in the

prior appeal. This Court should enforce its prior ruling and require the State to proceed in federal court. And in any event, 3M's new allegations of an additional AFFF source independently justify removal. For either or both reasons, the Court should reverse the remand order.

## JURISDICTIONAL STATEMENT

3M removed this case under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). On November 26, 2025, the district court entered an order and judgment remanding the case to state court and determining that the State is entitled to recover attorney's fees under 28 U.S.C. § 1447(c), of an amount to be determined. A11–12; A14. 3M timely filed a notice of appeal from that order on that same day. A20–21; *see* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed pursuant to" 28 U.S.C. § 1442 is "reviewable by appeal." *See also* 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the district court erred in finding it lacked federal jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), where the State abandoned the concessions that this Court

identified in a prior appeal as the sole basis for remanding this case to state court.

## STATEMENT OF THE CASE

### A.   PFAS And MilSpec AFFF

PFAS are chemicals used in an array of products, including industrial and consumer goods. A121 (¶¶ 49–53). PFAS are also key ingredients in AFFF, a firefighting foam widely used by the U.S. military on bases, airfields, and ships to extinguish life-threatening, fuel-based fires. A27, 41 (¶¶ 2, 45). The Department of Defense has observed that in "settings where fuel fires are inevitable and potentially devastating," AFFF is a "'mission critical product that saves lives and protects assets.'" A41, 55–57 (¶¶ 45, 86) (alteration omitted).

Although the military developed AFFF, it enlisted private chemical manufacturers (including 3M) to maintain a sufficient supply. A41 (¶ 45); Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the Roosevelts' Vision for American Naval Power (1923-2005)* 37 (June 30, 2006), https://tinyurl.com/ven2j9c5. The military developed detailed specifications for AFFF that it required private manufacturers to follow. A41–42 (¶ 46). Manufacturers must follow rigorous inspection and testing procedures to "assure supplies . . . conform to [the] prescribed

requirements." U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* 2–3 (Nov. 21, 1969).[1]

The AFFF MilSpec also requires using PFAS. Until recently, the specifications expressly mandated that any AFFF produced for the U.S. military contain "fluorocarbon surfactants"—a class of PFAS. A42–43 (¶ 47). While the AFFF MilSpec no longer identifies PFAS by name, it still requires the presence of PFAS: There is currently no other chemical that can satisfy the military's specific performance criteria, like rapid fuel-fire suppression. A42–43 (¶ 47) (citing MIL-PRF-24385F(4) § 6.6 (2020)).

3M produced and sold MilSpec AFFF to the federal government for over three decades. A43 (¶ 48). The U.S. military has used 3M's MilSpec AFFF at military facilities across the country, including at sites in Illinois. A43 (¶ 48). As relevant here, government reports record that MilSpec AFFF made by 3M was used at two U.S. military sites in Illinois on the banks of the Mississippi River: the Rock Island Arsenal and the

---

[1] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

Savanna Army Depot. A27, 43, 45–48 (¶¶ 2, 48, 54–70). Use of MilSpec AFFF at those sites allegedly resulted in release of contaminants into the soil, where they migrated to groundwater that flowed toward the Mississippi River. A45–48 (¶¶ 54–70) (citing reports). One report canvassed "historical evidence that 'firefighting foam operations [at the Rock Island Arsenal] [were] conducted *in* the Mississippi River'" and that MilSpec AFFF was "released *into*" the river. A47 (¶ 66) (emphases added). Another noted that MilSpec AFFF used at the Savanna Army Depot was "'released onto the soil [and] subsequently would have migrated to groundwater'" that "predominant[ly] . . . flow[s] . . . towards the Mississippi River." A46 (¶ 58).

3M also used AFFF at its own manufacturing facilities, including one in Illinois on the banks of the Mississippi River: the Cordova Facility. Dkt. 16 at 3; A41 (¶ 44 n.3). That facility lies roughly 25 miles upstream from the Rock Island Arsenal and 30 miles downstream from the Savanna Army Depot. A27, 45, 47 (¶¶ 2, 55, 63).

## B.   The AFFF Multidistrict Litigation

In recent years, various plaintiffs—including States, public water providers, and private individuals—have brought an array of similar

8

suits against AFFF manufacturers. The suits generally allege that "AFFF products used at airports, military bases, or certain industrial locations caused the release of" PFAS "into local groundwater and contaminated drinking water." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.,* 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

The Judicial Panel on Multidistrict Litigation ("JPML") centralized these AFFF actions into a single multidistrict litigation ("MDL") in the District of South Carolina. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.,* 357 F. Supp. 3d at 1396. The JPML concluded that the consolidation of AFFF suits would "promote the just and efficient conduct of this litigation." *Id.* at 1394. That is partially because the JPML anticipated that "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *Id.* The federal government-contractor defense immunizes government contractors from state tort liability when they produce equipment for the U.S. military pursuant to "'reasonably precise specifications'" issued by the government. *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1351 (11th Cir. 2009) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). Manufacturers in the MDL, including 3M, are indeed asserting the

federal government-contractor defense based on their production of MilSpec AFFF.

## C. The State's Suits And 3M's Removals

1. In 2022 and 2023, the State of Illinois filed not one but three separate, substantially overlapping PFAS suits against 3M (and other defendants) in Illinois state court. Each suit seeks recovery for alleged PFAS contamination to the State's natural resources (including the Mississippi River and its ecosystem). The key difference among the suits is that one seeks recovery for harm caused by PFAS stemming from AFFF; one for harm caused by PFAS stemming from non-AFFF sources; and a third (this case) for harm caused by PFAS stemming from 3M's Cordova Facility. A115, 131, 160–61, 168–69 (¶¶ 11–12, 104–08, 244 & pp.61–62).[2]

2. 3M removed all three cases to federal district court in Illinois, asserting jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1)). *See* A33 (¶ 19). In support of removal, 3M alleged in all

---

[2] *See* AFFF Complaint ¶¶ 21, 33, 45, 48, 50, 604–710, *Illinois v. 3M Co.*, No. 23-cv-2620 (N.D. Ill. Apr. 26, 2023), ECF No. 1-1; Non-AFFF Complaint ¶¶ 17, 19, 28, 353–58, 375–462, *Illinois v. 3M Co.*, No. 23-cv-1341 (N.D. Ill. Mar. 3, 2023), ECF No. 1-2.

three cases that it manufactured MilSpec AFFF under the direction of the federal government, giving rise to a federal government-contractor defense. 3M further alleged that PFAS from MilSpec AFFF and from other sources have commingled in the environment, such that 3M can assert its government-contractor defense for any contamination attributable to MilSpec AFFF.

In this case specifically, 3M's initial notice of removal alleged that the State seeks recovery for areas of PFAS contamination in the Mississippi River where PFAS compounds from MilSpec AFFF discharged from the Rock Island Arsenal have commingled with PFAS compounds discharged from the Cordova Facility. Dkt. 3 at 9, 15–16 (¶¶ 2–3, 24). Because the PFAS compounds from these different sources are chemically indistinguishable and have plausibly commingled in the river, 3M expressed its intent to invoke the federal government-contractor defense for any contamination allocated to MilSpec AFFF. Dkt. 3 at 9–10, 15–18, 22–26 (¶¶ 2–4, 24–34, 42–48).

The State did not oppose removal of the "AFFF" case but did move to remand the "non-AFFF" case to state court. The JPML has transferred both the State's "AFFF" and "non-AFFF" cases to the AFFF MDL, where

they are pending. *See* Order, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2873 (J.P.M.L. June 5, 2023), ECF No. 1927; Order, *id.* (J.P.M.L. Aug. 3, 2023), ECF No. 2020.

The State also moved to remand in this case. It argued that 3M's federal defense is not implicated because the State's complaint disclaimed recovery for AFFF generally and disclaimed recovery from the Rock Island Arsenal specifically. Dkt. 3 at 200. 3M argued that the State's disclaimer did not defeat removal under this Court's decision in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 941–47 (7th Cir. 2020). 3M explained that here, as in *Baker*, the disclaimer did not eliminate the need for the factfinder to resolve issues that go to the merits of 3M's federal defense—namely, "how much (if any) of the alleged contamination" in a given area "resulted from MilSpec AFFF for which 3M has a federal defense." Dkt. 5 at 8–21.

The district court granted the State's motion to remand. *See Illinois ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948 (C.D. Ill. 2023). It agreed that 3M acted under the United States in manufacturing MilSpec AFFF and that 3M's federal government-contractor defense is colorable. *Id.* at 954–56. But the court concluded that 3M's defense was not implicated by the

State's claims in this case because of the State's disclaimer. In the court's view, the disclaimer rendered 3M's government-contractor defense "[un]necessary" because "once [3M] shows that a certain portion of the contamination stemmed from MilSpec AFFF . . . *that* contamination is eliminated from the case." *Id.* at 957–58 (emphasis added).

3. 3M appealed. *See Raoul*, 111 F.4th at 848. This Court rejected the district court's conclusion that the State's disclaimer in its complaint defeated removal. Relying on *Baker*, the Court explained that, "even though" the State "expressly excluded 3M from liability for PFAS from AFFF," 3M's theory of removal still required a factfinder to determine whether certain areas of recovery (like the Mississippi River) are contaminated by PFAS "sourced from AFFF" and thus "potentially . . . subject to [the government contractor] defense." *Raoul*, 111 F.4th at 848–49.

The Court ultimately upheld the district court's remand order, but on a different basis than the one urged by the State and adopted by the court below. It concluded that, although the State's disclaimer in its complaint was not sufficient to prevent removal, two further "concessions" the State had made at oral argument "on appeal" could permit the case to proceed

in state court. *Raoul*, 111 F.4th at 849. First, the State "clearly and unequivocally conceded" that it could recover only for PFAS in an area where all alleged contamination was "100% . . . sourced from the Cordova facility" and the State "would not seek relief against 3M for mixed PFAS contamination." *Id.* at 849. Second, "the State expressly agreed that," as a result of the first concession, "a factfinder [would] not need to apportion the PFAS contamination between sources." *Id.*; *see also* A91.

The Court concluded that those concessions, unlike the State's disclaimer, did support remand because (if honored) they would render 3M's federal defense irrelevant and obviate the need for the factfinder to apportion contamination between MilSpec AFFF and other sources of PFAS. According to the Court, the concessions meant that the State could hold 3M liable for PFAS contamination "only in areas where the contamination is wholly derived from the Cordova Facility," and no apportionment would be needed because "[i]f even a morsel of contamination is not from PFAS produced at the Cordova Facility (such as AFFF out of the Rock Island Arsenal), the State's recovery is barred." *Raoul*, 111 F.4th 848; *accord* A93 (State representing that "[i]f it's not from Cordova, then the State will not recover," regardless of "whether . . .

the something else that is not Cordova that caused any given contamination . . . is MilSpec AFFF, whether 3M made it, or whether it's a completely different chemical"); A89–91 (State conceding it must "prove that 100 percent of the contamination came from Cordova" such that, for any given area, the State "would not recover" at all unless it could prove "that all of the contamination came from Cordova").

### D.  State Court Discovery On Remand

Following remand to state court, 3M propounded requests for admission to clarify the contours of the State's newly narrowed claims in light of the concessions the State made to this Court on appeal. But the State shifted its position yet again. Instead of confirming that it sought recovery only for areas *solely* contaminated by the Cordova Facility and disclaiming areas with the potential for commingling (like the Mississippi River and its ecosystem), the State backtracked in its responses in two critical ways. First, the State made clear that it seeks recovery for areas with PFAS derived from sources *other* than the Cordova Facility and has forsworn only recovery for contamination from the Rock Island Arsenal. And second, the State revealed that it *will* need to apportion various contamination in those areas from various sources

(including MilSpec AFFF from the Rock Island Arsenal, Savanna, or elsewhere) and will attempt to do so through expert testimony. The State has now all but abandoned the concessions it made before this Court, putting this case in the same posture as before oral argument in the prior appeal.

*1. Refusal to Confine Recovery To Cordova.* The State told this Court previously that 3M will be "liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova Facility." *Raoul*, 111 F.4th at 849. But in its discovery responses, the State refused to limit its recovery to areas of contamination sourced solely from the Cordova facility. A183–94.

3M asked the State whether it seeks recovery for harm at sites, including "the Mississippi River[,] where there is any PFAS that was *not* produced, manufactured, used, or Released *at or from the Cordova Facility*." A188 (Response No. 3) (emphases added). The State refused to abide by its prior concession confining recovery to contamination wholly derived from Cordova. Instead, the State said only that it is not seeking recovery for injury "derived from mil-spec AFFF contamination *from the Rock Island Arsenal*." A188 (Response No. 3) (emphasis added).

In short: The State's discovery responses negated its representations in the prior appeal that it seeks recovery only for areas of contamination derived wholly from the Cordova Facility. *Raoul*, 111 F.4th at 849.

**2. *Apportioning PFAS Between Sources.*** The State also represented to the Court in the prior appeal that, as a result of its concession confining recovery to the Cordova Facility, "a factfinder will not need to apportion the PFAS contamination between sources." *Raoul*, 111 F.4th at 849. But the State's discovery responses back away from that representation as well.

Instead, the State's discovery responses make clear that it plans to use expert testimony to apportion contamination between that caused by non-AFFF PFAS from Cordova and AFFF PFAS from other sources. 3M asked the State whether it is seeking recovery for harm (including to "the Mississippi River") "where there is PFAS derived from the use or Release of *AFFF that has mixed with PFAS unrelated* to the use or Release of AFFF." A189 (Response No. 4) (emphasis added). And the State responded only that it was not seeking recovery for "mil-spec AFFF contamination from the Rock Island Arsenal." A189 (Response No. 4); *see*

A187 (Response No. 1) ("admit[ting] that it is possible that there is a potential for one or more PFAS to be present").

When asked whether it seeks recovery for any harm, including to "the Mississippi River[,] *where any PFAS, even a morsel, derived from AFFF use or Release is present*," the State again walked back its concession. It responded only that it is not seeking recovery for "damage derived from mil-spec AFFF contamination *from the Rock Island Arsenal.*" A187 (Response No. 2) (emphasis added); *accord* A190 (Response No. 5).

But recovering for any areas of mixed contamination will necessarily require apportionment of PFAS between sources in that area. The State confirmed as much when it acknowledged that, in areas where "other contamination is present," it will have to "identify PFAS contamination caused by operations at the Cordova Facility," which it plans to do using "expert testimony," as illustrated by the fact that one of its experts signed and verified its discovery responses. A189–90 (Response No. 4); *accord* A186–89 (Response p. 4 and Nos. 1–3).

In other words, the State now seeks to recover for areas where "other contamination is present," requiring the apportionment analysis that this Court held must take place in federal court.

### E.   3M's Renewed Removal

1. The State's revelations retriggered 3M's right to a federal forum and put 3M on the clock to exercise that right within 30 days of receiving the State's responses. 28 U.S.C. § 1446(b)(3). Thus, 3M promptly removed the case again on October 23, 2025.

3M's renewed notice of removal alleged that, contrary to its representations to this Court, "[t]he State's verified discovery responses, alongside 3M's plausible allegations that MilSpec AFFF commingled with alleged contamination from the Cordova Facility, necessarily mean that," as to any given area of recovery, "a factfinder *will* need to apportion PFAS contamination" "between that stemming from the Cordova Facility and that sourced from MilSpec AFFF (which would be subject to the government contractor defense)." A37 (¶ 33) (emphasis added). In addition, 3M's removal notice identified the Savanna Army Depot—on the banks of the Mississippi River upstream from the Cordova Facility— as another source of MilSpec AFFF contamination. A30, 37, 45–46 (¶¶ 11, 32, 55–62). 3M alleged that, based on that additional source of MilSpec AFFF discharged into the Mississippi River, all portions of the Mississippi River for which the State seeks recovery are plausibly

contaminated by PFAS from MilSpec AFFF. A37, 45–48 (¶¶ 32, 54–70).

The State again moved to remand. It denied that its discovery responses contradicted its prior representations to this Court. *E.g.*, Dkt. 15-1 at 1–11. And the State disclaimed recovery from the Savanna Army Depot, but argued that it could use expert testimony to disentangle contamination from that facility from PFAS contamination from the Cordova Facility. Dkt. 15-1 at 10–11.

2. The district court granted the State's motion. *See* A1–13. The court stated that "nothing in the State's discovery responses indicate[d] that the State has altered the scope of its claims." A10. The court acknowledged that portions of the State's responses excluded only contamination from the Rock Island Arsenal, but said that "ma[de] sense," because, at that point, no other "potential source of MilSpec AFFF had been identified." A7. And the court concluded that, rather than removing again, 3M should have "h[e]ld the State to its concessions" by raising "waiver" arguments to the *state court*, ignoring that § 1446(b)(3) required 3M to exercise its removal rights within 30 days of receiving the State's discovery responses. A5–7. The district court also did not address 3M's new allegations in support of removal regarding AFFF

contamination from the Savanna Army Depot. 3M timely noticed its appeal of that order. A20–21.

In that same order, the district court also determined that the State may recover attorney's fees under 28 U.S.C. § 1447(c). The court acknowledged that this provision authorizes fees only when a defendant lacks an objectively reasonable basis to remove or there are unusual circumstances. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). The district court decided that 3M "lacked an objectively reasonable basis for removing" because, in its view, 3M took "the State's responses out of context." A10–11. And it held that the case presented "unusual circumstances" because 3M's removal "served to either delay the state court proceedings or get another bite at the apple of getting this case into multi-district litigation." A11.

On January 27, 2026, while this appeal was pending, the district court entered an order awarding the State its requested Westlaw and PACER charges of $2,387.15. A22–23. The district court denied the State's requested amount of incurred fees, stating that the State "has not provided any evidence that the amount of fees it requests are fees it actually incurred" and refusing to "award over $300,000 in attorneys' fees

for a case that was actively litigated on this [c]ourt's docket for less than two months without any proof that the large sum of attorneys' fees requested was actually incurred." *Id.* The district court, however, provided the State an opportunity to file further support for its request, *id.*, which it did on February 17, 2026, Dkt. 30. The court has not ruled on the renewed fee request.

In an abundance of caution, 3M noticed its appeal of the award of Westlaw and PACER charges. A24–25. 3M requested that the fees appeal be held in abeyance pending the district court's resolution of the State's request for the amount of attorney fees it actually incurred. *See People ex rel. Raoul v. 3M Co.*, No. 26-1381 (7th Cir.), ECF No. 11. Once resolved, 3M will appeal any further award, move to consolidate all three appeals, and request permission to file a supplemental brief on the propriety of the fee and expense awards.

## SUMMARY OF THE ARGUMENT

The district court erred in remanding this case to state court. 3M has satisfied each of the elements for federal-officer removal, and the State itself has eliminated the only basis this Court previously identified for remanding. The district court's contrary ruling misreads both this

Court's prior decision and the State's changed position on remand. The ruling also disregards the additional source 3M identified of MilSpec AFFF that has plausibly commingled with PFAS from the Cordova Facility, which independently supports removal.

**I.** This Court previously held that remand was appropriate solely because of concessions that the State made on appeal that further limited the scope of its claims. The State has now abandoned those limitations, eliminating the only basis for remand and compelling reversal.

This Court's prior decision makes clear that the State's concessions at oral argument in the previous appeal were the only basis for remand. The Court's prior decision did not question that 3M is a person who "acted under" the direction of the federal government or that its federal government-contractor defense could support removal under 28 U.S.C. § 1442(a)(1). And the Court rejected the State's argument (and the district court's prior rationale) that the disclaimer in the State's complaint defeats removal—an argument already foreclosed by precedent in this Circuit and since rejected by others. The Court held instead that 3M's federal defense was not implicated—but *only* because of the State's unequivocal representations at oral argument in the

previous appeal that the State will recover solely for contamination that is wholly derived from the Cordova Facility, and that a factfinder will not need to apportion contamination from AFFF and other sources.

But when provided the opportunity in discovery on remand to make good on those concessions, the State backtracked. The State disavowed its prior concession that its suit will be confined to areas where all of the alleged contamination is from the Cordova Facility. And it admitted that the state court will have to try to disentangle contamination from multiple sources, including MilSpec AFFF, in the same area and that the State will try to prove its apportionment among those sources through expert testimony—the very kind of analysis that the State previously assured this Court that its concessions on appeal would prevent.

The district court nevertheless remanded because it erroneously failed to recognize the direct conflicts between the State's prior concessions on appeal and its position on remand. The court airbrushed away those contradictions by crediting the State's own claim of consistency and by straining *sua sponte* to reconcile the State's incompatible assertions. That was error. In the federal-officer removal context, courts are supposed to resolve close calls in favor of removal, not remand. In any

event, the district court's efforts to harmonize the State's positions fail on their own terms. And its suggestion that 3M should have sought protection from the state court ignores that 3M had a 30-day deadline by which to exercise its right to remove; it could not wait to see if the state court would hold the State to its concessions.

**II.** The district court's remand order is also wrong for the independent reason that 3M plausibly alleged an additional source of MilSpec AFFF that confirms that the State is seeking relief in this action for sites where PFAS from AFFF is commingled with PFAS from other sources. 3M alleged that MilSpec AFFF from the Savanna Army Depot—located on the banks of the Mississippi River, upstream of the Cordova Facility— flowed down to and indistinguishably commingled with other contamination in every area around the facility.

Those plausible allegations, which the court must credit, *Baker*, 962 F.3d at 941, independently support removal. They make clear that adjudicating the State's claims will require a factfinder to (try to) identify the source of any PFAS contamination. As this Court and multiple other Circuits have held, that factfinder must be a federal one. *See Raoul*, 111 F.4th at 848; *Baker*, 962 F.3d at 945 n.3; *Maine v. 3M Co., Inc.*, 159 F.4th

129, 138–40 & n.24 (1st Cir. 2025); *Maryland v. 3M Co.*, 130 F.4th 380, 390–92 (4th Cir. 2025); *cf. Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999, 1008 (6th Cir. 2026).

The district court, however, simply ignored 3M's allegations regarding the Savanna Army Depot altogether. It never addressed that separate source of MilSpec AFFF on the Mississippi River, let alone explained how the factfinder could avoid the apportionment inquiry in and around the Mississippi River that this Court has recognized belongs in federal court. That error independently requires reversal.

## STANDARD OF REVIEW

This Court reviews "subject-matter jurisdiction and the propriety of the removal of a state-court action *de novo*." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018); *see also Raoul*, 111 F.4th at 848.

## ARGUMENT

3M properly removed under the federal-officer removal statute. 28 U.S.C. § 1442(a)(1). That provision authorizes (1) a federal officer, or a "'person'" that "'act[ed] under' a federal officer," to remove an entire civil action (2) if the action is "'for or relating to any act under color of such office'" and (3) he pleads a colorable federal defense to at least one claim in the case. *Raoul*, 111 F.4th at 848 (quoting 28 U.S.C.

§ 1442(a)(1)). "One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). For that reason, "courts must liberally construe § 1442(a)" in favor of removal, "credit[ing]" the defendant's "plausible" theory of the case. *Baker*, 962 F.3d at 941, 947. The district court erred in holding that the statute does not authorize removal here.

## I.   3M Properly Removed Given The State's Retraction Of The Concessions It Made To This Court

3M checks all the boxes for federal-officer removal in this case. There is now no dispute that 3M is a "person," *Baker*, 962 F.3d at 942; that 3M "act[ed] under" federal authority in producing MilSpec AFFF, *Betzner*, 910 F.3d at 1015; and that 3M has a colorable federal government-contractor defense as to MilSpec AFFF it manufactured, *Raoul*, 111 F.4th at 848. The only dispute is whether 3M has plausibly alleged that the State's claims *implicate* that federal defense. This Court's prior decision in this case and the State's abandonment of the concessions this Court deemed critical make clear that the answer is yes. The district court's contrary conclusion is demonstrably incorrect.

## A. The State's Retraction Of Its Prior Concessions Destroys The Only Basis For Remanding

This Court's prior decision made clear that removal would be appropriate in this case but for the State's concessions on appeal. The Court explained that the State could not avoid federal jurisdiction merely by disavowing damages for harm caused by AFFF. *Raoul*, 111 F.4th at 848. This Court had already held as much in *Baker*, 962 F.3d at 945 & n.3, and other courts of appeals have echoed that conclusion. Blanket "disavow[als]" of recovery for what the defendant plausibly alleges to be "indivisible federal conduct," *Ohio*, 165 F.4th at 1007–08, impermissibly leave a state factfinder to "disentangle" important questions of "causation" and "apportionment," *Maryland*, 130 F.4th at 390–92; *accord Maine*, 159 F.4th at 138–40 & n.24.

That rule is why the State had to go further in the prior appeal by making two additional, critical concessions. *Raoul*, 111 F.4th at 849. The State agreed to confine its claims to "areas where the contamination is wholly derived from the Cordova Facility," and it took the position that as a result there would be no need for "a factfinder . . . to apportion the PFAS contamination between sources." *Id. That*, the State represented, was what made this suit unique: "[t]his is a case about a specific

manufacturing facility" (*i.e.*, the Cordova Facility) rather than cases with "*factfinding* questions" about "the source" of the PFAS. A96 (emphasis added).

On remand in state court, however, the State discarded these crucial concessions. *See* A35–37, 43–45, 52 (¶¶ 26–33, 49–53, 78). The State made clear that it *does* still seek to recover damages for any area of the State contaminated by PFAS from the Cordova Facility, even if that area is also contaminated by "other" sources of contamination, including MilSpec AFFF. *E.g.*, A189–90 (Response No. 4). And it revealed that it will attempt to trace and apportion the PFAS contamination stemming from the Cordova Facility and will rely on experts to do so, even relying on one of its experts to verify its discovery responses. A186–90 (Response p. 4 & Nos. 1–4), A196. But such expert analysis must be evaluated by a judge for "relevance and reliability" and a jury for "credibility and accuracy." *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). The State thus withdrew its limitation on the scope of recovery to areas of contamination wholly derived from the Cordova Facility and re-introduced the very apportionment issues that this Court found must

take place in federal court.[3]

The case therefore stands on the same footing now as it did before oral argument in the prior appeal: The State seeks to recover for areas of commingled contamination, such that "a factfinder [will] need to apportion the contamination between that stemming from the Cordova Facility (which would not be subject to the government contractor defense) and that sourced from MilSpec AFFF (which would potentially be subject to the defense)." *Raoul*, 111 F.4th at 848–49. That factfinder, this Court (and others) have held, must be a federal one, because that factual issue directly implicates 3M's federal government-contractor defense. *See id.* at 848–49; *Baker*, 962 F.3d at 945 n.3; *Maine*, 159 F.4th at 138–40 & n.24; *Maryland*, 130 F.4th at 390–92; *cf. Ohio*, 165 F.4th at 1007–08.

### B. The District Court Erred In Disregarding The State's Irreconcilable Positions

The district court's contrary conclusion rests on three fundamental errors.

---

[3] *Contra* A93 (the State agreeing that this case "is not going to require any finder of fact to do any kind of apportionment about what may or may not have come from 3M or AFFF").

*First*, the court improperly credited the State's *own characterization* of its discovery responses as consistent with its representations in the prior appeal. The court took at face value the State's view that its responses aligned with its claims "[a]s pleaded in the State's Complaint and as represented to the Seventh Circuit." A6–7 (alteration adopted) (quoting A187–88). But the State's concessions and discovery responses (despite the latter's purposeful obfuscation) speak for themselves, and its self-serving assertion of consistency deserves no deference. Indeed, in a proceeding under the federal-officer removal statute, the Court is supposed to "credit" the *defendant's* theory of the case and resolve doubts "in favor" of federal jurisdiction, *Baker*, 962 F.3d at 941, 947—not take the plaintiff's position on faith.

*Second*, the district court erred by *sua sponte* positing untenable ways to square the State's discovery responses with its representations to this Court. *See* A7–8. To take one critical example, the district court zeroed in on 3M's request that the State admit that PFAS from different sources "can commingle or mix in environmental media." A7 (purporting to quote Response No. 4 but quoting Response No. 1); *see also* A186–87 (Response No. 1). In response to that request, the State *agreed* that, "in any media,"

PFAS from one source may commingle with PFAS from another source. A186–87 (Response No. 1). Yet despite having disavowed in the prior appeal any recovery for areas of commingled contamination, the State asserted that it *can* recover "even if there are other contaminants in the same media." *Id.* The State explained that it would engage an expert to allocate the PFAS among sources. *Id.*

The district court, however, hypothesized its own way to reconcile the State's conflicting representations. It speculated that "media" *may* not pertain to the same geographic "area" and thus *could* conceivably be consistent with the State's representations that it would limit its recovery to areas contaminated solely by the Cordova Facility. A7–8. But that is not a straightforward reading of the State's responses. And in the federal-officer removal context in particular, the court should have credited 3M's allegations and resolved any doubt in favor of removal, not manufactured ambiguity and then resolved it in favor of remand. *See Baker*, 962 F.3d at 941, 947.

In any event, the district court's "media"/"area" distinction cannot rescue the State's other discovery responses. 3M propounded eleven other questions on this topic that did not use the term "media." The State's

answers confirm that the State wrote a check to this Court to secure remand that it now will not cash.

For instance, 3M asked the State to admit that it did not seek recovery for harm to various locations (like the Mississippi River) "where there is PFAS derived from" AFFF "that has mixed with PFAS unrelated to" AFFF. A189 (Response No. 4). But the State declined to make that straightforward admission. A189–90 (Response No. 4). Instead, it averred again that, "even if other contamination is present" in a given location, it would simply rely on expert testimony to *try to* disaggregate the different sources of contamination, which the State claimed would enable it to recover for contamination from the Cordova Facility. *Id.* That, again, is exactly the kind of apportionment analysis the State told this Court no one would have to undertake. *Raoul*, 111 F.4th at 848–49. The district court's "media"/"area" dichotomy cannot explain away that contradiction.

*Finally*, the district court improperly faulted 3M for removing again based on the State's retractions rather than attempting to enforce—in state court—the State's concessions in the prior appeal. A5. State-law waiver and similar principles might well require the State to honor its

concessions, and 3M reserves all rights. But that is beside the point: 3M has a federal statutory right to have a federal court adjudicate a case relating to its work for the federal government and implicating its federal-officer defense. Nothing in the removal statute or precedent compels a defendant to forfeit that right in favor of potential state-law protections in state court.

Moreover, 3M's right to removal comes with a clock—30 days from the date upon which 3M receives a paper from which it can first ascertain a basis for federal jurisdiction. 28 U.S.C. § 1446(b)(3); *see Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). 3M thus could not have waited to find out whether the state court would hold the State to its representations. Its only option was to exercise its statutory right to remove expeditiously.

That forced choice was not of 3M's making but the direct result of the *State*'s decision to renege on its unequivocal concessions in the prior appeal. Given this Court's clear guidance on the line the State had chosen (and needed) to walk to pursue its case in state court, it should have been easy for the State to honor its commitments. Now that the State has failed to do so, it cannot insist that 3M should have responded to its

about-face by trying to enforce the State's concessions in state court rather than removing the State's (revised) case to federal court.

## II. 3M's Allegations Regarding Commingling Of AFFF From The Savanna Army Depot Support Removal

Removal is independently proper because 3M has plausibly alleged commingling of MilSpec AFFF from another source on the Mississippi River—the Savanna Army Depot—with PFAS from other sources. *E.g.*, A27, 30, 37, 45–46, 48 (¶¶ 2, 11, 32, 54–62, 69–70). That additional source of contamination makes apportionment unavoidable and necessitates a federal factfinder. The district court erred by ignoring that additional source of contamination altogether.

The Savanna Army Depot sits on the banks of the Mississippi River upstream of the Cordova Facility. 3M plausibly alleges that PFAS from the military's past discharge of 3M's MilSpec AFFF flows down to and indistinguishably commingles with any PFAS from the Cordova Facility. A45–46, 48 (¶¶ 54–62, 69–70). Consequently, every portion of the Mississippi River for which the State seeks recovery in this suit plausibly contains MilSpec AFFF contamination from the Savanna Army Depot, which is indistinguishable from PFAS contamination from any other source (including Cordova).

Any PFAS contamination in the Mississippi River thus implicates 3M's government-contractor defense and cements 3M's right to removal. And as this Court has made clear, the State's disclaimer in its complaint—purporting to exclude recovery for contamination from AFFF generally—has no effect on 3M's entitlement to remove. *Raoul*, 111 F.4th at 848–49. Because 3M has plausibly alleged that every area of the Mississippi River around the Cordova Facility is contaminated by MilSpec AFFF, this Court must "credit" that allegation. *Baker*, 962 F.3d at 941, 947. Thus, a "factfinder" will need to "apportion how much of a given sample of PFAS contamination came from Military AFFF." *Maryland*, 130 F.4th at 391.

As a result, under the Court's reasoning in the prior appeal, the only conceivable way the State might avoid removal despite 3M's allegations regarding the Savanna Army Depot would be to disavow recovery for *any* harm to the Mississippi River and its ecosystem. Only that categorical concession could possibly eliminate the need for the kind of "apportion[ment]" inquiry that this Court has held "a federal court should be the one to resolve." *Raoul*, 111 F.4th at 849.

The State, however, has done no such thing. Instead, in its motion to remand, it disclaimed recovery for contamination from the Savanna Army Depot. Dkt. 15-1 at 7. But that disclaimer is no different from the one the State posited in its original complaint and this Court rejected in *Raoul*. Nor can the State sidestep that conclusion by simply disagreeing with 3M's plausible allegations that MilSpec AFFF from the Savanna Army Depot flowed downstream to contaminate all areas of the river around the facility. *E.g.*, *id.* at 9–11. The district court (and this Court) are required to "credit" 3M's plausible allegations. *Baker*, 962 F.3d at 941, 947. And that the State again suggests it will rely on expert testimony to distinguish MilSpec AFFF from the Savanna Army Depot only underscores that its claims do require apportionment.

The district court did not grapple with any of this. Its remand order never mentioned the Savanna Army Depot. The court identified no way the State could litigate its claims without forcing the factfinder to try to allocate contamination between sources. And, as this Court made clear in the prior appeal, 3M is entitled to have a federal court make that determination. That provides a freestanding basis for removal in this

case, and the district court's error in remanding without addressing that issue independently compels reversal.

* * *

The State's discovery responses and 3M's plausible allegations regarding the Savanna Army Depot are separate paths to the same destination: The State's claims in this case unavoidably require apportionment between MilSpec AFFF and other PFAS sources, which is a task that a federal court must undertake. The State's retraction of its prior concessions eliminates the only solution this Court previously deemed sufficient. And in any event, 3M's allegations concerning Savanna meant that the State would have to go much further even than it did in the prior appeal—including by disclaiming any harm to the Mississippi and its ecosystem—to avoid removal today. For both reasons, removal is proper, and the remand order should be reversed.

## CONCLUSION

The order of the district court should be reversed.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Lauren R. Goldman*
___

Amir C. Tayrani
Jonathan C. Bond
John W. Tienken
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500

Lauren R. Goldman
  *Counsel of Record*
Justine Goeke
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
LGoldman@gibsondunn.com

Elizabeth A. Kiernan
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
(214) 698-3100

*Counsel for Defendant-Appellant*
*3M Company*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that:

1. This brief complies with the type-volume requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 7,673 words; and

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font.

*/s/ Lauren R. Goldman*
Lauren R. Goldman

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I caused a true and correct copy of this document to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Lauren R. Goldman*
Lauren R. Goldman

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

28 U.S.C. § 1442 ....................................................... Add.1

28 U.S.C. § 1446 ....................................................... Add.3

28 U.S.C. § 1447 ....................................................... Add.6

28 U.S.C. § 1442 provides:

**Federal officers or agencies sued or prosecuted**

(a)  A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)  The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2)  A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3)  Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4)  Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b)  A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

(c)  Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer—

(1)  protected an individual in the presence of the officer from a crime of violence;

(2)  provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

(3)  prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d)  In this section, the following definitions apply:

(1)  The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

(2)  The term "crime of violence" has the meaning given that term in section 16 of title 18.

(3)  The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

(4)  The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

(5)  The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6)  The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

28 U.S. Code § 1446 provides:

**Procedure for removal of civil actions**

(a)  Generally.—

A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b)  Requirements; Generally.—

(1)  The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(2)

(A)  When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

(B)  Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

(C)  If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

(3)  Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become re-

movable.

(c) Requirements; Removal Based on Diversity of Citizenship.—

(1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

(2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

(A) the notice of removal may assert the amount in controversy if the initial pleading seeks—

(i) nonmonetary relief; or

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

(3)

(A) If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).

(B) If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

(d) Notice to Adverse Parties and State Court.—

Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse

parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

(e)  Counterclaim in 337 Proceeding.—

With respect to any counterclaim removed to a district court pursuant to section 337(c) of the Tariff Act of 1930, the district court shall resolve such counterclaim in the same manner as an original complaint under the Federal Rules of Civil Procedure, except that the payment of a filing fee shall not be required in such cases and the counterclaim shall relate back to the date of the original complaint in the proceeding before the International Trade Commission under section 337 of that Act.

(g)  Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.

28 U.S. Code § 1447 provides:

**Procedure after removal generally**

(a)  In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.

(b)  It may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court.

(c)  A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

(d)  An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

(e)  If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

# SHORT APPENDIX

## CIRCUIT RULE 30(d) CERTIFICATION

All of the materials required by Seventh Circuit Rule 30(a) are included in this appendix bound with the appellant's brief. All of the materials required by Seventh Circuit Rule 30(b) are included in the separately bound appendix.

*/s/ Lauren R. Goldman*
Lauren R. Goldman

# APPENDIX TABLE OF CONTENTS

## *Short Appendix*

Remand Order (ECF No. 19)..................................................... A1

Judgment (ECF No. 20)......................................................... A14

## *Appendix*

Docket, *People of the State of Illinois ex rel. Kwame Raoul v. 3M Co.*, 4:25-cv-04189 (C.D. Ill.)............................................ A15

Notice of Appeal (ECF No. 21) ............................................. A20

Text Order (ECF Jan. 27, 2026)........................................... A22

Notice of Appeal (ECF No. 31) ............................................ A24

Notice of Removal (ECF No. 1) ........................................... A26

*Illinois ex rel. Raoul v. 3M Co.*, No. 23-3031, 111 F.4th 846 (7th Cir. 2024)........................................................................... A61

*Illinois ex rel. Raoul v. 3M Co.*, No. 4:22-cv-04075, 693 F. Supp. 3d 948 (C.D. Ill. 2023) ........................................................ A65

Transcript of Seventh Circuit Oral Argument in *Illinois ex rel. Raoul v. 3M Co.*, No. 23-3031, 111 F.4th 846 (7th Cir. 2024) (ECF No. 1-2)................................................................................ A77

First Amended Complaint (ECF No. 1-4)......................... A107

Defendant 3M Company's First Set of Requests for Admission to Plaintiff (ECF No. 1-5) ................................................... A174

People of the State of Illinois' Responses and Objections to Defendant 3M Company's First Set of Requests for Admission to Plaintiff (ECF No. 1-6)............................................... A182

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* KWAME RAOUL, Attorney General of the State of Illinois, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-04189-SLD-RLH |
| 3M COMPANY, | ) ) | |
| Defendant. | ) ) | |

ORDER

Before the Court are Plaintiff People of the State of Illinois, *ex rel.* Kwame Raoul,

Attorney General of the State of Illinois's ("the State") Motion to Remand, ECF No. 15, and

Defendant 3M Company's ("3M") motion to stay the case pending a decision by the Judicial

Panel on Multidistrict Litigation ("JPML"), ECF No. 17. For the reasons that follow, the Motion

to Remand is GRANTED, so the motion to stay is MOOT.

**BACKGROUND**

This is the second time this case has been removed to federal court, and a recitation of the

procedural history that led to this second removal is warranted. In March 2022, the State filed a

complaint against 3M in state court seeking to hold 3M responsible for discharging

perfluoroalkyl and polyfluoroalkyl substances ("PFAS") into the environment from its Cordova

Facility in Rock Island County, Illinois. *See* Compl. 1, Not. Removal Ex. A, *People of the State*

*of Ill. ex rel. Kwame Raoul v. 3M Co.*, 693 F. Supp. 3d 948 (C.D. Ill. 2023) ("*Raoul I*") (No.

4:22-cv-04075), ECF No. 1-1. The complaint defines PFAS to exclude "any PFAS that have

contaminated Illinois' environment or natural resources from aqueous film-forming foams

('AFFF')." *Id.* at 8. 3M removed the case to this Court in April 2022 under the federal officer

1

A1

removal statute, 28 U.S.C. § 1442(a)(1).  *See* Not. Removal 1, *Raoul I*, 693 F. Supp. 3d 948 (No. 4:22-cv-04075), ECF No. 1.  It argued that it intended to assert the federal government contractor defense—which "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design," *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1183 (7th Cir. 2012)—because the contamination the State seeks to hold it responsible for could encompass PFAS contamination from AFFF used by the military at the Rock Island Arsenal ("MilSpec AFFF") which 3M developed and sold to the military.  Not. Removal  2, 8, 14, *Raoul I*, 693 F. Supp. 3d 948 (No. 4:22-cv-04075).  The State moved to remand the case to state court, arguing that they did not seek to hold 3M liable for any contamination from MilSpec AFFF.  Br. Supp. Mot. Remand 2, *Raoul I*, 693 F. Supp. 3d 948 (No. 4:22-cv-04075), ECF No. 4.

This Court granted the motion to remand.  *Raoul I*, 693 F. Supp. 3d at 959.  For a defendant to remove a case pursuant to the federal officer statute, it "must show it was a (1) 'person' (2) 'acting under' the United States, its agencies, or its officers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim."  *Ruppel*, 701 F.3d at 1180–81 (quoting 28 U.S.C. § 1442(a)).  The Court found that the outcome of the State's motion hinged on whether the State was suing 3M for an act taken under color of authority.  *See Raoul I*, 693 F. Supp. 3d at 956.  Because the State "expressly disclaimed claims for PFAS contamination stemming from anywhere other than the Cordova Facility—including the Rock Island Arsenal," the Court found that 3M was not being sued for an act taken under color of federal authority.  *Id.* at 957.

The Seventh Circuit affirmed the Court's remand order on slightly different grounds.  *See People of the State of Ill., ex rel. Kwame Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) ("*Raoul II*").  The Seventh Circuit held that "the State's concessions on appeal ha[d] foreclosed

2

A2

3M's ability to assert" the contractor defense, meaning 3M did not have a colorable defense to the State's claims. *Id.* at 848. The court explained that 3M might have been able to assert the contractor defense if the State had sought to hold it liable for "mixed PFAS contamination—in other words, PFAS contamination arising from both the Cordova Facility and from AFFF from the Rock Island Arsenal"—"even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." *Id.* at 848, 849. This conclusion was based on *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 939, 945, 947 & n.3 (7th Cir. 2020), in which the Seventh Circuit held that manufacturing companies who were sued for polluting soil around a housing complex properly removed the case to federal court under the federal officer statute even though the resident plaintiffs "purport[ed] to disclaim that their lawsuit [wa]s about [the] manufacture of Freon-12 for the government." One of the defendant companies had "allege[d] that its Freon-12 production resulted in waste streams that contained lead and arsenic," the two main toxins the resident plaintiffs complained about. *Id.* at 945 n.3. The Seventh Circuit reasoned that because the parties disputed whether the plaintiffs' injuries were caused by products manufactured for the government, removal was available because a federal court should resolve such a "difficult causation question." *Id.*

The Seventh Circuit reasoned in the appeal in this case that if a factfinder would have to "apportion the contamination between that stemming from the Cordova Facility (which would not be subject to the government contractor defense) and that sourced from AFFF (which would potentially be subject to the defense)," the contractor defense would similarly be available because that would be a difficult causation question a federal court should decide. *Id.* at 848–49. But because in this case, the State had "clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination," the Seventh Circuit found

3

A3

the contractor defense "wholly irrelevant." *Id.* at 849.   The Seventh Circuit noted that, under the

State's concessions, for it to "recover against 3M for PFAS contamination in a designated area,

100% of that contamination must be sourced from the Cordova Facility." *Id.*  "If even a morsel

of contamination is not from PFAS produced at the Cordova Facility . . . , the State's recovery is

barred." *Id.*

The case proceeded in state court until 3M filed a notice of removal on October 23, 2025.

*See generally* Not. Removal, ECF No. 1.  3M contends that the State's "discovery responses

reveal that it no longer intends to abide by its representations to the Seventh Circuit." *Id.* ¶ 1.

The State has once again moved to remand the case, arguing that its discovery responses "do not

provide any basis for 3M's removal," that it has "re-stated and re-confirmed the concessions that

[it] made to this Court and the Seventh Circuit," and that it is "not seeking damages for any

PFAS contamination from MilSpec AFFF from the Rock Island Arsenal, or any source, that has

commingled with PFAS contamination from the Cordova facility."  Mem. Supp. Mot. Remand 5,

ECF No. 15-1.  The State requests that the Court order 3M to pay the attorneys' fees it has

incurred as a result of the removal.  *Id.* at 17–18.  3M opposes remand, *see generally* Resp. Mot.

Remand, ECF No. 16, and moves the Court to reserve ruling on the motion to remand pending a

decision by the JPML on whether to transfer this case to an AFFF multidistrict litigation, Mem.

Supp. Mot. Stay 11, ECF No. 17-1.

## DISCUSSION

### I.    Removal

3M's removal of this case to federal court after this Court remanded it and the Seventh

Circuit affirmed that remand is based on the State's alleged "abandonment of its broad

concessions on appeal."  Resp. Mot. Remand 1.  3M argues that the State's discovery responses

contradict its concessions to the Seventh Circuit and that it is now seeking relief for mixed PFAS contamination such that the elements for removal under the federal officer statute are met, as the Seventh Circuit in *Raoul II* already held.  *Id.* at 1–2, 9–10.

As an initial matter, the Court questions why, even if the State had made statements in discovery that contradicted its earlier concessions, the appropriate remedy would be to allow the State to assert the claims that it had previously explicitly disclaimed rather than to merely hold the State to its concessions.  As a practical matter, the Court understands that 3M desires to have this case transferred to an AFFF multidistrict litigation.  *See generally* Mem. Supp. Mot. Stay. But the Seventh Circuit found that the State waived any claim for relief against 3M for all PFAS contamination not entirely sourced from the Cordova Facility.  *See Raoul II*, 111 F.4th at 849. One would expect that if a plaintiff made arguments or statements suggesting that it was seeking relief that it had previously explicitly waived, the defendant would seek to enforce the waiver with the trial court by filing a motion *in limine* or a motion to strike.  This case is in an even stranger procedural posture.  3M is arguing that the State has abandoned its earlier concession while the State contends that it has "not retreated from or narrowed the representations [it] made to the Seventh Circuit."  Mem. Supp. Mot. Remand 16.  The defendant seeks to relieve the plaintiff of an explicit waiver that the plaintiff does not seek permission to abandon.  The Court is unaware of, and 3M fails to point to, any authority allowing a defendant to relieve a plaintiff from an explicit waiver when the plaintiff continues to request its enforcement.

In any case, the Court disagrees with 3M that the State's discovery responses contradict its earlier concessions to the Seventh Circuit.  And without any changed circumstances or facts, *Raoul II* remains the law of this case.  *Cf. Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022).

A5

3M points to four responses to its requests for admission that it argues "reveal that [the State] *does* seek to recover where 'other contamination' not from Cordova 'is present' and that determining whether particular contamination derives from Cordova or another source will require expert testimony and thus apportionment by a factfinder." Resp. Mot. Remand 7–8; Not. Removal ¶¶ 27–31. But 3M's arguments are premised on reading language from the responses in isolation or out of context.

3M first points to the State's response to its second request for admission, Resp. Mot. Remand 7, which was:

> Admit that You do not seek any recovery or relief of any kind in this Action for harm or damage of any kind to any Landfill, Public Water System, Water Treatment Facility, Well, Resource at Issue, or the Mississippi River where any PFAS, even a morsel, derived from AFFF use or Release is present.

Resps. Req. Admission 5, Not. Removal Ex. E, ECF No. 1-6. The State objected to this request on a few bases including that it was "not stated with reasonable specificity" and that it "calls for a legal conclusion." *Id.* The State then said that it "admit[s] only that [it is] not seeking any recovery or relief in this Action for harm or damage derived from mil-spec AFFF contamination from the Rock Island Arsenal" and that "[a]s pleaded in the [State's] Complaint and as represented to the Seventh Circuit, the [State] intend[s] to seek in this Action recovery and relief for harm and damage to Illinois' environment and natural resources at and around the Cordova Facility . . . caused by PFAS contamination from the Cordova Facility." *Id.* at 5–6. The State further responded that it "anticipate[s] that expert testimony will identify PFAS contamination caused by operations at the Cordova Facility." *Id.* at 6. 3M argues that the State only admitted that it would not seek relief for harm from MilSpec AFFF contamination from the Rock Island Arsenal. Resp. Mot. Remand 7 (arguing that the State left "open the possibility that it would recover for PFAS from sources other than Cordova"). That is obviously incorrect. The State

A6

specifically referenced its concessions to the Seventh Circuit and explicitly stated that it was only seeking relief for harm caused by PFAS contamination from the Cordova Facility. The State's specific reference to MilSpec AFFF from the Rock Island Arsenal in one sentence does not change this. The State suggests that it referenced the Rock Island Arsenal because that was the only potential source of MilSpec AFFF 3M had identified in the earlier removal proceedings. Mem. Supp. Mot. Remand 6. This makes sense—it would be odd for the State to admit it was not seeking relief for contamination coming from other specific locations that were not at issue in the litigation. And the rest of the response makes clear that the State agrees that it will only seek relief for harm caused by PFAS contamination from the Cordova Facility.

3M next points to the State's response to its first request for admission, Resp. Mot. Remand 7, which was: "Admit that PFAS Released to the environment in any media, including from the use or Release of AFFF, can commingle or mix in environmental media with PFAS derived from other AFFF and non-AFFF use or Release." Resps. Req. Admission 4. The State objected that the request was "not stated with reasonable specificity" since some of the terms, including "media" were undefined. *Id.* It then admitted "that it is possible that there is a potential for one or more PFAS to be present at measurable amounts with one or more other PFAS in a media." *Id.* at 5. But it noted that it "anticipate[s] that expert testimony will identify PFAS contamination caused by operations at the Cordova Facility . . . and that the PFAS contamination at issue in this Action can be identified and traced back to the Cordova Facility, even if there are other contaminants in the same media." *Id.* 3M argues that the phrase "even if there are other contaminants in the same media" means that the State has abandoned its concession that it would not recover if "even a morsel of contamination is not from PFAS produced at the Cordova Facility." Resp. Mot. Remand 15 (emphasis and quotation marks

omitted).  The Court disagrees.  The State's concession was that it would only seek relief for particular areas in which it could prove that all the PFAS contamination came from the Cordova Facility.  As the Seventh Circuit put it, "3M is liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova Facility."  *Raoul II*, 111 F.4th at 849.  3M's argument is premised on the idea that *media* is a synonym for *area*, but that is not clear from the record.  Media is not defined in the requests for admission.  *See* Req. Admission 1–4, Not. Removal Ex. D, ECF No. 1-5.  At oral argument before the Seventh Circuit, the State explained that within a general location—such as the water or the banks of the river, etc.—there might be parts or places where it can prove that all of the contamination came from the Cordova facility and parts or places where they could not.  *See* Oral Arg. Tr. 15:22–16:2, Not. Removal Ex. A, ECF No. 1-2 ("[W]e're talking about an area that's – you know, there could be contamination over here from Cordova and not from over here.  So we'd say to the jury, well, give us recovery from – for this part and not that part.").  The State's discovery response is consistent with this explanation.  Even if there are other contaminants present in a larger area, as long as the State can prove that all the PFAS contamination in a particular area came from Cordova, then the State can recover for contamination in that area.

3M next points to the State's response to its fourth request for admission, Resp. Mot. Remand 8, which was:

> Admit that You do not seek any recovery or relief of any kind in this Action for harm or damage of any kind to any Landfill, Public Water System, Water Treatment Facility, Well, Resource at Issue, or the Mississippi River where there is PFAS derived from the use or Release of AFFF that has mixed with PFAS unrelated to the use or Release of AFFF.

Resps. Req. Admission 7.  The State objected that the request was not stated with reasonable specificity and that it called for a legal conclusion.  *Id.*  The State then said that "as represented

A8

to the Seventh Circuit," it admits that it intends to seek relief for harm to the environment around

the Cordova Facility "caused by PFAS contamination from the Cordova Facility." *Id.* It then

specifically admits that it is not seeking relief for harm derived from MilSpec AFFF

contamination from the Rock Island Arsenal and states that "even if other contamination is

present, . . . [it] believe[s] expert testimony can identify PFAS contamination caused by

operations at the Cordova Facility." *Id.* at 7–8. 3M argues that based on these responses, the

State has "failed to deny that it would seek to recover for mixed AFFF and non-AFFF PFAS."

Not. Removal. ¶ 29. Again, this is not correct. Reading the response as a whole, the State

clearly reaffirmed its concession that it was only seeking relief for contamination caused by

PFAS from the Cordova Facility. For the reasons provided in the last few paragraphs, neither the

specific reference to the Rock Island Arsenal nor the reference to other contamination being

present in the broad locations identified in the request for admission change this interpretation.

Lastly, 3M points to the State's response to its sixth request for admission, which was:

"Admit that You are unable to show that 100% of the PFAS detected at or around the Cordova

Facility is derived from non-AFFF PFAS or PFAS-containing products that 3M produced,

manufactured, used, or Released at or from the Cordova Facility." Resps. Req. Admission 9.

The State objected that the request was "not stated with reasonable specificity because the

undefined term 'derived' is vague and ambiguous and subject to multiple interpretations." *Id.*

Otherwise, the State denied the request and denied that the request "is consistent with [the

State's] legal obligations to establish liability on the claims asserted in the . . . Complaint." *Id.*

3M contends that based on this response, "the State no longer concedes that 100% of

contamination at a site for which it seeks recovery must be sourced from the Cordova Facility or

the State's recovery is barred." Not. Removal ¶ 31. This is an overreading of the response. The

premise of the request for admission (or at least 3M's argument that the response shows a change in position) is that the State would need to prove that all the PFAS *at any place near the Cordova Facility* came from the Cordova Facility to obtain any relief.  But the State conceded, and the Seventh Circuit recognized, only that it would need to show that 100 percent of the PFAS contamination *in a particular area* came from the Cordova Facility to obtain relief for contamination in that area.

In sum, 3M points to nothing in the State's discovery responses indicating that the State has altered the scope of its claims.  3M's arguments are all based on overreading the responses or taking individual statements in the responses out of context.  The State has reaffirmed numerous times that it is only seeking relief for areas where it can prove that all of the PFAS contamination came from the Cordova Facility.  There will be no apportionment by a factfinder necessary.  If the State fails to prove that all of the PFAS contamination in a particular area came from the Cordova Facility, a factfinder will not determine what portion of the PFAS came from the Cordova Facility and what portion came from another source—it will deny the State all relief for that area.  The Motion to Remand is GRANTED.

## II.    Attorneys' Fees

28 U.S.C. § 1447(c) permits an award of attorney's fees upon remand.  There is no strong presumption in favor of a fee award.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 137 (2005).  In *Martin*, the Supreme Court held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Id.* at 141.  It reasoned that "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining

Congress' basic decision to afford defendants a right to remove as a general matter." *Id.* at 140. But "district courts retain discretion to consider whether unusual circumstances warrant a departure from th[is] rule in a given case." *Id.* at 141.

Awarding attorney's fees is appropriate in this case. Because 3M's arguments all take the State's responses out of context, it lacked an objectively reasonable basis for removing this case for a second time. Alternatively, given the unusual circumstances of this case, attorney's fees serve the purpose of § 1447(c) and the Court would find them appropriate even if 3M's basis for removal had been objectively reasonable. The Seventh Circuit has stated, albeit while answering a different question, that "[m]ultiple removals could encounter problems—could even lead to sanctions—if nothing of significance changes between the first and second tries." *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999) (citation omitted). Nothing of significance has changed here. The State has continuously disclaimed recovery from any PFAS contamination caused by PFAS not from the Cordova Facility. It appears that the removal in this case served to either delay the state court proceedings or get another bite at the apple of getting this case into multi-district litigation—even seeking for this Court to delay ruling on its jurisdiction—neither of which are appropriate uses for removal. The State is DIRECTED to file a brief detailing the attorneys' fees it incurred litigating the motion to remand and supporting evidence by December 8, 2025. 3M can file a response addressing only the amount of the attorneys' fees by December 22, 2025.

## CONCLUSION

Accordingly, Plaintiff People of the State of Illinois, *ex rel.* Kwame Raoul, Attorney General of the State of Illinois's ("the State") Motion to Remand, ECF No. 15, is GRANTED. This suit is remanded back to the Circuit Court of the Fourteenth Judicial Circuit, Rock Island

County.  The Clerk is directed to enter judgment and close the case.  The Court GRANTS the

State's request for attorney's fees.  The State is DIRECTED to file a brief detailing the attorneys'

fees it incurred litigating the motion to remand and supporting evidence by December 8, 2025.

Defendant 3M Company can file a response addressing only the amount of the attorneys' fees by

December 22, 2025.  The Motion to Stay, ECF No. 17, is MOOT in light of the remand.

　　　　Under Federal Rule of Civil Procedure 62(a), "execution on a judgment and proceedings

to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."  Because

the Federal Rules of Civil Procedure define "judgment" as an "order from which an appeal lies,"

Fed. R. Civ. P. 54(a), and an order remanding a case removed pursuant to 28 U.S.C. § 1442 is

appealable, 28 U.S.C. § 1447(d), it appears that this remand order will be subject to an automatic

30-day stay unless this Court "orders otherwise," Fed. R. Civ. P. 62(a).  *See Doe v. Gundersen*

*Lutheran Health Sys., Inc.*, No. 23-cv-694-wmc, 2024 WL 663479, at *1 (W.D. Wis. Feb. 16,

2024) (similarly finding that an order remanding a case removed under the federal officer statute

"appears to be subject to an automatic 30-day stay" under Rule 62(a)).  The Court finds that an

immediate remand is warranted here because the removal was unfounded and the State will be

prejudiced by any further delay in the state case caused by a stay.  Accordingly, the Court

DISSOLVES the automatic stay immediately.  *See* Fed. R. Civ. P. 62(a) advisory committee's

notes to 2018 amendment ("Amended Rule 62(a) expressly recognizes the court's authority to

dissolve the automatic stay or supersede it by a court-ordered stay. . . . [I]t may be important to

allow immediate enforcement of a judgment that does not involve a payment of money."); *Doe v.*

*Margaret Mary Cmty. Hosp. Inc.*, No. 1:23-cv-01655-JRS-KMB, 2024 WL 701942, at *3 (S.D.

Ind. Feb. 21, 2024) (ordering a remand to be "effective immediately" when the removal was

unfounded, the possibility of state court prejudice against the defendant was low, and the court

saw "no reason to permit further delay").

The Court ORDERS the Clerk to effectuate the remand by mailing a certified copy of this

order to the Clerk of the Circuit Court for the Fourteenth Judicial Circuit.  *See* 28 U.S.C.

1447(c).

Entered this 26th day of November, 2025.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

A13

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | |
|---|---|
| **People of the State of Illinois, ex rel.** ) | |
| **Kwame Raoul, Attorney General of the** ) | |
| **State of Illinois,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case Number: 4:25-cv-04189-SLD-RLH** |
| ) | |
| **3M Company,** ) | |
| ) | |
| **Defendant.** ) | |

### JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT**.    This action came before the Court for a trial by jury.    The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT**.    This action came before the Court, and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that this case is remanded back to the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County.

**Dated: 11/26/2025**

s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court

A14